UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT PARKER, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2123** |
| **NGM INSURANCE COMPANY, ET AL.,**<br>    **Defendants** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is a motion *in limine* to preclude Dr. Robert Steck from offering certain testimony at trial.[1] The motion is opposed.[2] For the reasons that follow, the motion *in limine* is **GRANTED**.

## BACKGROUND

This personal-injury case arises from a motor-vehicle collision in New Orleans, Louisiana, on August 21, 2014.[3] On that date, Plaintiff Robert Parker was driving his 2012 Hyundai Sonata in a southerly direction on Tulane Avenue near its intersection with Interstate 10 ("I-10") in New Orleans. Also traveling southbound on Tulane Avenue at that time was Defendant Edson Rivera, who was operating a 2003 Ford E250 utility van owned and operated by his employer, Multitec, LLC. Rivera was driving directly behind Parker's vehicle. According to Parker, he began to slow down as he approached congested traffic. It is undisputed that, as Parker slowed, he was rear-ended by the Ford van driven by Rivera. As a result, on May 13, 2015, Parker filed suit against Rivera, his employer Multitec, LLC, and NGM Insurance Company ("Defendants") in the Civil District Court for the Parish of Orleans, State of Louisiana.[4] The action was removed to federal court on

---

[1] R. Doc. 52.
[2] R. Doc. 58.
[3] The Background Section of this Order and Reasons is taken, in part, from a prior Order and Reasons. *See* R. Doc. 60 at 1.
[4] R. Doc. 1-1.

1

the basis of federal diversity jurisdiction on June 16, 2015.[5] Parker alleges, due to the collision, he "sustained serious bodily injuries, including but not limited to his back, neck, head, shoulders and extremities," and seeks damages for "past and future mental anguish and physical suffering, past and future expenses for medical care, including expenses for travel to the physicians' office, loss of enjoyment of life, loss of consortium, and past and future lost earnings, along with property damage to his vehicle."[6] Parker's wife, Krista Elaine Parker, also seeks damages for "loss of consortium, services, and society of her husband."[7]

Dr. Robert Steck is a neurosurgeon who treated Robert Parker once in March of 2013. In responding to written discovery, Plaintiffs identified Dr. Steck as one of Parker's treating physicians prior to the accident-in-question. Upon learning of Dr. Steck's treatment of Robert Parker, the Defendants obtained Parker's medical records from his visit with Dr. Steck. The records from Parker's sole visit with Dr. Steck are 15 pages in total, including the certification page.[8] On April 12, 2016, Defendants listed Dr. Steck as a witness on their witness list, describing him as a "neurosurgeon who treated plaintiff prior to the accident in question,"[9] and Dr. Steck was deposed on May 2, 2016. Dr. Steck was not retained as an expert witness, and he did not prepare a Rule 26 expert report.

Plaintiffs seek to preclude Dr. Steck from offering certain testimony at trial.[10] According to Plaintiffs, during Dr. Steck's deposition, defense counsel "presented Dr. Steck with documents that [] both post-dated the one exam he performed and that Dr. Steck had never previously seen before: Namely, a medical report dated April 25, 2013

---

[5] R. Doc. 1.
[6] R. Doc. 1-1 at 4.
[7] R. Doc. 1-1 at 4.
[8] R. Doc. 52-2.
[9] R. Doc. 39 at 2.
[10] *See generally* R. Docs. 52, 52-1.

2

from Dr. Shamieh concerning Plaintiff Robert Parker and an MRI of Plaintiff's lumbar spine from September 2014."[11] Plaintiffs contend: "Thereafter, the defense asked Dr. Steck to render expert opinions about these documents. In fact, the defense asked Dr. Steck to perform a comparative analysis of a September 2012 MRI of . . . Parker's lumbar spine to that of the September 2014 MRI."[12] In sum, Plaintiffs argue Dr. Steck improperly "performed the comparative analysis, and rendered expert opinions on it, the Plaintiff[,] and the new medical records."[13] Plaintiffs note that Dr. Steck is not a retained expert and did not prepare an expert report in accordance with Federal Rule of Civil Procedure 26.[14] For that reason, Plaintiffs contend Dr. Steck should not be permitted to testify on matters outside the scope of his actual treatment of Robert Parker.[15] Stated differently, Plaintiffs argue Dr. Steck's testimony, as a treating physician, must be limited in scope to Robert Parker's "medical records, medical history, [and] recent visits . . . not pre-selected medical records handed to a medical doctor as an expert witness for the first time mid-deposition and post-expert report deadline."[16]

## LAW AND ANALYSIS

The admissibility of expert opinion testimony is governed by Federal Rule of Civil Procedure 26. Rule 26(a)(2)(B) provides that, "if the witness is one retained or specially employed to provide expert testimony in the case," the witness must prepare and sign a written expert report that includes, *inter alia*, a "complete statement of all opinions the witness will express and the basis and reasons for them." Rule 26 contemplates, however, that some witnesses who offer expert testimony, but were not specifically retained to do

---

[11] R. Doc. 52-1 at 2.
[12] R. Doc. 52-1 at 2.
[13] R. Doc. 52-1 at 2.
[14] R. Doc. 52-1 at 1–3.
[15] R. Doc. 52-1 at 3.
[16] R. Doc. 52-1 at 3.

so, need not prepare an expert report. This latter category of witnesses, who are often referred to as "non-retained experts," includes treating physicians.[17] In fact, it is well accepted that "[t]reating physicians are not required to submit an expert report under Rule 26."[18] Without having to provide an expert report, "[a] treating physician may testify to his opinions about a plaintiffs injuries if his testimony is based on knowledge acquired during the course of his treatment of the plaintiff."[19] However, where a physician's testimony "relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like an expert and must submit a report under Rule 26(a)(2)(B)."[20] Some courts have noted that the "relevant question" is whether the "treating physicians acquired their opinions . . . directly through their treatment of the plaintiff."[21] A court in the Western District of New York defined the distinction between retained experts and treating physicians as follows:

> Experts are retained for purposes of trial and their opinions are based on knowledge acquired or developed in anticipation of litigation or for trial. A treating physician's testimony, however, is based on the physician[']s personal knowledge of the examination, diagnosis and treatment of a patient and not from information acquired from outside sources.[22]

---

[17] *See, e.g.*, *Rea v. Wisconsin Coach Lines, Inc.*, No. 12-1252, 2014 WL 4981803, at *2–3 (E.D. La. Oct. 3, 2014).

[18] *Butler v. Louisiana*, No. 12-00420-BAJ-RLB, 2014 WL 7186120, at *2 (M.D. La. Dec. 16, 2014) (citing FED. R. CIV. P. 26(a)(2)(B) advisory committee's notes, 1993 amendment (treating medical professionals may be "called to testify at trial without any requirement for a written report)). "A written report is . . . not required for a treating physician whose testimony and opinions derive from information learned during actual treatment of the patient, rather than from subsequent evaluation as a specially retained expert." *Knorr v. Dillard's Store Servs., Inc.*, No. Civ.A. 04-3208, 2005 WL 2060905, at *3 (E.D. La. Aug. 22, 2005) (citing *Gray v. Vastar Offshore, Inc.*, No. Civ.A. 04-1162, 2005 WL 399396, at *1 (E.D. La. Feb. 14, 2005)).

[19] *Knorr*, 2005 WL 2060905, at *3. "A number of courts [have] determined that a treating physician may offer testimony as a non-retained expert if the testimony is confined to those facts or data the physician learned during actual treatment of the plaintiff." *Rea*, 2014 WL 4981803, at *2 (citing *Morgan v. Chet Morrison Contractors, Inc.*, No. 04-2766, 2008 WL 7602163, at *2 (E.D. La. July 8, 2008); *Perdomo v. United States*, No. 11-2374, 2012 WL 2138106, at *4 (E.D. La. June 11, 2012); *LaShip, LLC v. Hayward Baker, Inc.*, 296 F.R.D. 475, 480 (E.D. La. 2013); *Kim v. Time Ins. Co.*, 267 F.R.D. 499, 502 (S.D. Tex. 2008)).

[20] *Rea*, 2014 WL 4981803, at *2 (citing *LaShip*, 296 F.R.D. at 480; *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007); *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011)). *See also Williams v. State*, No. 14-00154-BAJ-RLB, 2015 WL 5438596, at *3 (M.D. La. Sept. 14, 2015).

[21] *Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995).

[22] *Mangla v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996).

In *Previto v. Ryobi North America, Inc.*, a court in the Southern District of Mississippi, on facts similar to the instant case, addressed the difference between appropriate treating physician testimony, on the one hand, and expert testimony that requires a report, on the other.[23] In *Previto*, the defendant moved to strike the proposed testimony of Dr. Gwen Cousins, one of the plaintiff's treating physicians, on the grounds that it was not appropriate treating physician testimony.[24] Dr. Cousins examined the plaintiff in June of 2010 and, at some time thereafter, reviewed treatment that had been provided to the plaintiff by other physicians.[25] One of Dr. Cousins's medical opinions, regarding the size of an object in the plaintiff's eye, was based on her review of other physicians' medical records and their treatment of the plaintiff.[26] The court concluded that Dr. Cousins's opinions with respect to the size of the object were not proper treating physician testimony:

> It is . . . apparent that Dr. Cousins' opinion regarding the size of the foreign body based upon her review of the CT scan, which was taken on June 15, 2005, was not based upon her personal treatment of Plaintiff. Instead it was founded upon a subsequent review of treatment rendered to Plaintiff by other medical providers. This is not appropriate treating physician testimony, and is more akin to the testimony of a retained expert.[27]

In the present case, Dr. Steck saw Robert Parker only once, in March of 2013. Dr. Steck was not retained as an expert witness, and he did not prepare an expert report. During Dr. Steck's deposition, defense counsel asked Dr. Steck about his treatment of Robert Parker, the opinions he reached after examining Parker, and the medical records generated as a result of that visit. The testimony and opinions elicited from Dr. Steck in response to such questions are appropriate treating physician testimony, and Dr. Steck

---

[23] No. 1:08cv177-HSO-JMR, 2010 WL 5185055 (S.D. Miss. Dec. 16, 2010).
[24] *Id.* at *3.
[25] *See id.*
[26] *Id.*
[27] *Id.*

5

may testify with respect to those opinions at trial. However, defense counsel also asked Dr. Steck about medical treatment that Robert Parker received after he visited Dr. Steck. Specifically, counsel asked Dr. Steck about (1) treatment that Dr. Samer Shamieh provided Parker in May of 2013, approximately two months after Parker's only visit with Dr. Steck, and (2) an MRI performed on Robert Parker in September of 2014, over a year after Dr. Steck saw Parker. Counsel presented Dr. Steck with various records from Parker's treatment with Dr. Shamieh and asked him questions about those records and the treatment that Dr. Shamieh provided to Robert Parker. Defense counsel also showed Dr. Steck the September 2014 MRI and asked Dr. Steck questions about that MRI. Dr. Steck's responses to those questions were not in his capacity as a treating physician but, instead, were more akin to expert testimony under Rule 26(a)(2)(B). Because Dr. Steck is not a retained expert and did not provide an expert report, Dr. Steck's testimony must be based on his personal knowledge of his examination, diagnosis, and treatment of Robert Parker, not from information acquired from outside sources.

As a result, Dr. Steck cannot testify with respect to Dr. Shamieh's treatment of Robert Parker in May of 2013 or the MRI conducted in September of 2014.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motion *in limine* is **GRANTED**.

New Orleans, Louisiana, this 9th day of June, 2016.

_____*Susie Morgan*_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**