UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT PARKER and KRISTA ELAINE PARKER, | * * | CIVIL ACTION NO. 2:15cv2123 |
|     Plaintiffs | * * | SECTION: E (3) |
| VERSUS | * * | |
| NGM INSURANCE COMPANY, THE MAIN STREET AMERICA GROUP, MULTITEC, LLC, and EDSON RIVERA, | * * | |
|     Defendants | | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE REGARDING EVIDENCE CONTRARY TO THE EGG SHELL PLAINTIFF RULE**

MAY IT PLEASE THE COURT:

    **1. FACTS**

The Plaintiff was injured when he was rear ended by the Defendant who was driving a commercial van in New Orleans, Louisiana on August 21, 2014. Almost immediately following the wreck, Mr. Parker experienced significant tightening in his back along with pain. Mr. Parker left work that day and was able to get an appointment with Dr. Shamieh, an orthopedic spine surgeon, the day after the accident.

Mr. Parker's back was injured and he eventually underwent a major surgery which was a direct result of the wreck. Dr. Shamieh performed the L5-S1 anterior lumbar inter body and fusion coupled with posterolateral fusion and laminectomy. Mr. Parker chose Dr. Shamieh as his surgeon after the wreck because Dr. Shamieh previously treated Mr. Parker for low back pain and performed a discectomy. A discectomy is a much less invasive procedure than a fusion.[1]

---

[1] See Exhibit "A," Deposition of Dr. Samer Shamieh, pg. 107, lines 6-11.

1

Over a year prior to the August 21, 2014 wreck, in March of 2013, Dr. Shamieh performed a discectomy at L5-S1 on Mr. Parker.

This March 2013 surgery was performed due to Mr. Parker's history of lower back pain. Prior to that point, he had suffered with back pain for approximately 10+ years. Mr. Parker tried conservative treatment from chiropractic treatment to medicine. In 2012 and 2013, Mr. Parker's lower back pain was not improving. As a result, Mr. Parker made appointments with Dr. Steck and then Dr. Shamieh. Both surgeons advised that a L5-S1 discectomy was his best option.

Dr. Shamieh performed the discectomy in March 2013 and, by all accounts, this surgery was nothing short of a glowing result. Shortly after the surgery and following some post-surgical therapy, Mr. Parker was not having pain and he was relatively symptom free. Mr. Parker was released from Dr. Shamieh'scare. In fact, his results were so excellent, he wrote a glowing testimonial to Dr. Shamieh praising his results.[2]

Mr. Parker did not suffer from back pain after the March 2013 and up until this August 2014 wreck. Following the August 21, 2014 wreck that is the subject of this suit, Dr. Shamieh noted that Mr. Parker's symptoms had drastically changed. Parker had decreased range of motion, decreased strength and loss of sensation too name a few. He also had pain and spasms in his lower back.

It is undisputed that Plaintiff has a prior history of back problems. Mr. Parker has related this history to his treating physicians, the defense medical expert and defense counsel at his deposition. Since that time, and based on this testimony, defense counsel has acquired a voluminous amount of Plaintiff's prior medical records going back 10 to 20 years. These medical records confirm that Mr. Parker gave a truthful and accurate history to all parties involved in this litigation.

---

[2] See Exhibit "B," email from Robert Parker to Dr. Shamieh's office dated July 11, 2013.

## 2. EGGSHELL PLAINTIFF RULE

This Court has jurisdiction over this diversity action under 28 U.S.C. § 1291. Under Erie R.R. v. Tompkins, 304 U.S. 64 (1938), federal courts apply state substantive law to any issue or claim which has its source in state law. *Camacho v. Tex. Workforce Comm'n,* 445 F.3d 407, 409 (5th Cir. 2006) (citation omitted). It is undisputed that Louisiana substantive law applies to this negligence action.

It is well settled that, according to Louisiana law, a defendant "takes his victim as he finds him and is responsible for all natural and probable consequences" of his negligent conduct. *Lasha v. Olin Corp*., 625 So.2d 1002, 1005 (La. 1993). The defendant's liability for damages is not mitigated by the fact that the plaintiff's pre-existing physical infirmity was responsible in part for the consequences of the plaintiff's injury by the defendant. *Id*. Thus, when the defendant's tortious conduct aggravates a preexisting condition, the defendant must compensate the victim for the full extent of the aggravation. *Id.* at 1006. "An injured person is entitled to recover full compensation for all damages that proximately result from a defendant's tortuous act, even if some or all of the injuries might not have occurred but for the plaintiff's preexisting physical condition, disease, or susceptibility to injury." 2 Stein on Personal Injury Damages 3d § 11.1.

This concept is often referred to as the "eggshell" plaintiff principle. *See Chavers v. Travis,* 2004-0992, p. 8 (La. App. 4 Cir. 4/20/05), 902 So.2d 389, 394; *Logan v. Brink's, Inc.,* 2009-0001, p. 9 (La. App. 4 Cir. 7/1/09), 16 So.3d 530, 538. The defendant must take the victim as he finds him or her. The plaintiff, however, is required to establish a causal link between the tortious conduct and the aggravation of his pre-existing condition. If the evidence establishes that a plaintiff's pre-accident and post-accident conditions are identical in all meaningful respects, the

plaintiff has failed to carry his burden of proving causation. *Juneau v. Strawmyer,* 94-0903, p. 8 (La.App. 4 Cir. 12/15/94), 647 So.2d 1294, 1300.

Further, the Eggshell Plaintiff rule is also buttressed by Federal Rules of Evidence 401-403.[3][4] Evidence that runs afoul of the Eggshell Plaintiff rule is inadmissible because of irrelevance as defined under the Federal Rule of Evidence 401-402. Furthermore, should a Court decide that such evidence is relevant, the evidence should still be deemed inadmissible into evidence because the balancing test employed by Federal Rule 403.

### 3. ARGUMENT

The Plaintiffs seeks an order from this Court to prevent the Defendants' counsel from soliciting testimony and/or evidence that would contradict or tend to contradict the eggshell plaintiff rule with regard to both causation and damages.

At the Pretrial Conference, Defense counsel advised that he intends to introduce a voluminous amount of prior medical records and testimony indicating that Mr. Parker has a prior history of back pain. For example, the defense seeks to introduce prior medical records to the jury from Sports and Family Chiropractic that go back sporadically over 13+ years.[5] Additionally, the defense wants to do this without supporting deposition or live testimony from the chiropractor.

Regardless of how it is supported, such evidence such is cumulative, prejudicial and runs afoul of the eggshell plaintiff rule. The defendant's liability for damages is not mitigated by the

---

[3] Federal Rule of Evidence 401 provides that "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Notwithstanding, the article "further provides that evidence that is not relevant is inadmissible." Id. Moreover, Federal Rule of Evidence 402 holds that evidence is admissible unless it conflicts with other laws; and that irrelevant evidence is not admissible.

[4] Federal Rule of Evidence 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[5] See Exhibit "C," Medical Records of Sports and Family Chiropractic (Defense Exhibit 1 on the PTO).

fact that the plaintiff's pre-existing physical infirmity was responsible in part for the consequences of the plaintiff's injury by the defendant.  Mr. Parker's prior back history is well established.  His treating physicians and the defense medical expert are all aware of the prior history.  To allow the defense to beat the jury over the head with dated, foundationless, repetitive and irrelevant information will prejudice the jury and confuse them on the well settled eggshell plaintiff law.

The real issue in this case for the Jury concerns Mr. Parker's more immediate condition/treatment relative to how Mr. Parker was doing before and after the accident sued upon.  Mr. Parker admitted a prior history of back pain.  Mr. Parker will stipulate to the 2013 surgery.  It is unrefuted that Mr. Parker had a permanent impairment rating of 1-2% following the successful 2013 surgery.  And it is unrefuted that Mr. Parker has a permanent impairment rating of 10-14% following the 2014 surgery.[6]  Mr. Parker's past 13+ years of sporadic chiropractic treatment and medical records *before* the 2013 surgery have no function other than to confuse the jury as to law.  The pre-2013 information is not probative.

The only purpose of the pre-2013 evidence is to numb and prejudice the jury to the present injury and to twist the eggshell plaintiff doctrine on its head. The pre-2013 records have no bearing on the defense's ultimate and proximate burden, which is to say proving plaintiff's pre-accident and post-accident conditions were identical.

Given that Mr. Parker had an intervening surgery in 2013, approximately a year and a half before the 2014 wreck sued upon, a more appropriate and judicious scope would be to limit the prior medical history to the 2013 treatment of Dr. Shamieh and/or Dr. Steck.  Not only did they both treat Mr. Parker prior to the wreck sued upon, they also were provided accurate medical histories.  Dr. Shamieh has also been deposed and he will be called to testify at trial.

---

[6] See Exhibit "A," Deposition of Dr. Samer Shamieh, pg. 96, lines 3-23.

Furthermore, Dr. Shamieh has performed surgery on Mr. Parker's lumbar spine both before and after the wreck sued upon.

And perhaps most crucial, Dr. Shameih can testify to how Mr. Parker was doing following the 2013 surgery but before the accident. This is the crux of the case and Dr. Shamieh is the only doctor who can testify definitively on the subject, as he was there before and after with regard to both the surgeries and the wreck sued upon.

Finally, it is equally irrelevant and prejudicial to allow testimony pontificating on what could have been had Mr. Parker gotten a different surgery than the one he had in 2013. He had the discectomy, which all surgeons have agreed was the proper surgery. And all surgeons agree that the surgery was successful. Furthermore, all surgeons essentially agree on his current medical status.

## 4. CONCLUSION

The Plaintiffs seeks an order from this Court to prevent the Defendants' counsel from soliciting testimony and/or evidence that would tend to contradict or run afoul of the eggshell plaintiff rule as it relates to both causation and damages, including any medical records or testimony concerning his medical history prior to 2013, and any testimony or evidence speculating as to what surgery Mr. Parker should have had in 2013. Additionally, counsel for the defendants should not be permitted to circumvent the eggshell plaintiff rule in voir dire or at trial with regard to suggesting that an aggravation of a pre-existing injury is worth less than an injury with no pre-existing issues. Further, the Plaintiff seeks an order in the form of a precautionary instruction to the Defendants and/or witnesses for the Defendants from referencing or suggesting that same.

WHEREFORE, Plaintiffs Robert and Krista Parker, pray that the Court grant their motion in limine.

Respectfully submitted,

**MARTZELL, BICKFORD, & CENTOLA**


 /s/ Lawrence J. Centola, III
**LAWRENCE J. CENTOLA, III (#27402)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (Fax)

**BENJAMIN BROWN, NO. 29780**
BEN BROWN LAW GROUP, LLC
630 NORTH CARROLLTON AVENUE
NEW ORLEANS, LOUISIANA  70119
(504) 564-7677
bbrown@benbrownlawgroup.com

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing has been sent to counsel for all parties through the ECF system this 22nd day of June, 2016.

 /s/ Lawrence J. Centola, III